## RINE v. RINE.
No. 69-9925.

Circuit Court, Dade County.

December 5. 1969.

Earl D. Waldin, Jr. of Smathers & Thompson, Miami, for plaintiff.

Robert C. Lane, Miami, for defendant.

JAMES LAWRENCE KING, Circuit Judge.

*Final judgment of dismissal:* This cause came on to be heard for final hearing upon the wife's complaint for divorce, and the court having heard the testimony of the parties and their witnesses, con-

sidered the demeanor of the witnesses while testifying, and the memorandums and oral arguments of counsel, makes the following findings of fact —

The parties have been married, on this occasion, since September 3, 1963. They were first married to each other on June 7, 1960 and cohabited together as husband and wife until the wife obtained a divorce from the defendant husband on March 27, 1963.

At the time of the first divorce Bergliette B. Rine accepted the sum of $25,000 from the defendant, William E. Rine, as a lump sum payment in lieu of alimony and to release and relinquish her interest in a co-operative apartment located at 1 Harbor Way, Bal Harbor, Florida.

The defendant, William E. Rine, was born in 1908 and has been in an executive capacity with the Storer Broadcasting Company since 1932 when he managed the Wheeling, W. Virginia broadcasting station. The husband is presently retired with an annual income of approximately $60,000 derived principally from stock interests and other investments. The husband has certain financial obligations to his ex-wife and two sons of his first marriage.

The plaintiff has had three husbands and has her own separate estate presently valued at approximately $30,000. Her separate funds were derived in part from approximately $60,000 inherited by her from her first husband. There were no children born to the wife in either of the four marriages to her three husbands.

This is a most unusual case. None of the customary complaints so frequently heard in domestic disputes are present in the case at bar. Neither party partakes of alcoholic beverages except for an occasional social drink. Neither party has given the other even the slightest cause for concern in the area of marital infidelity. The parties spend all of their evenings together enjoying, according to the husband's testimony, "the beautiful gourmet cooking of my wife". The parties are both refined, mature, intelligent persons with deep feelings and sensitivities one for the other. There is not the slightest suggestion of any physical abuse on the part of either party. This marriage has never had to sustain the turbulence of financial problems that beset most couples appearing before the court. The husband has constantly, since the marriage of the parties, maintained a joint checking account, with balances averaging $18,000 to $20,000 at all times. The wife drew on this account for whatever sums necessary for her personal use and to maintain the household.

The plaintiff wife could only recall one incident in public, during the entire marriage, where she testified her husband's conduct

caused her embarrassment. She testified that while on a visit to the home of her sister, Mrs. Wolfson, at Crystal Lake in the spring of 1968 while playing gin rummy, the defendant was sarcastic to her and embarrassed her about the manner in which she was playing cards.

Mrs. Wolfson appeared and testified that while she had no recollection what the defendant husband actually said on that occasion but that "his attitude was sarcastic toward my sister". She further stated that after her sister had gone into the bedroom, the defendant husband followed her in to comfort his wife. Mrs. Wolfson further testified that her brother-in-law, the defendant, had always been a perfect gentleman and was an especially nice person for whom she enjoyed a fondness. Both the plaintiff and Mrs. Wolfson testified that the defendant seemed more mad at himself for his poor card playing than at his wife at the time of the alleged incident.

The defendant, in testifying concerning the gin rummy game, stated that he and the plaintiff had a marvelous time during the visit to Crystal Lake and that his in-laws had entertained them most graciously. The defendant stated that he was kidding about the entire matter and had pretended to be upset with himself for losing the gin rummy game as a compliment to his wife and sister-in-law on their superior card playing ability. He further stated that his sister-in-law had taught him, during the visit, how to play gin rummy and that seldom had he enjoyed himself more than during the several week visit.

From observing the demeanor of the witnesses while testifying and having had the opportunity to form conclusions concerning their veracity the court is of the opinion that the defendant's testimony concerning the card playing incident is truthful and worthy of belief. The plaintiff wife and her sister have obviously fabricated one isolated incident of "public embarrassment" under the mistaken impression that this constitutes a ground for divorce in Florida.

Buttressing the court's conviction and finding of fact in favor of the defendant husband on this point is the wife's testimony that she completely forgave her husband for his alleged misconduct, continued to live with him thereafter and enjoyed normal marital relations with him until approximately April, 1969.

The plaintiff wife's other complaints against her husband were matters occurring in private between her and her husband and consisted principally of two allegations of misconduct.

The husband completely denies any wrong doing, manifests a sincere love for his wife and deep concern over her physical well being.

The wife's principal complaint against her husband was that he harassed her in private concerning $100 per week checks she issued each week to cash. It is the wife's contention that the husband accused her of issuing these funds for building up her estate and demanded to know where the funds were going. The plaintiff wife candidly admitted on cross examination that she had used some of the funds to pay a Doctor Wolf who she had seen for the purpose of obtaining psychological help. Although she had been treated by Dr. Wolf since 1967, at $30 per visit, she had never informed her husband of either the fact that she was being treated by him or that she was using the "cash" checks to pay his fees over the intervening months.

The court finds that the defendant husband was justified in requesting of his wife an explanation of where the "cash" checks were going and that the wife did in fact deceive her husband concerning the expenditure of these monies.

The wife's only other complaint was that her husband had driven 60-70 miles per hour on their trip in the spring of 1968 to visit her sister at Crystal Lake with his hands off the steering wheel. The two of them were alone at the time and the plaintiff contends that although begged to do so, her husband refused and continued to so drive. The husband completely denies refusing to accede to his wife's request that he stop "kidding around" and that he immediately commenced to drive in a normal manner. The husband went on to testify that he has enjoyed a perfect driving record with no citations or violations of any type since he started driving in the early 1930's. The court believes the defendant's testimony and finds that this isolated incident in over nine years of marriage is insufficient, even if believed, to constitute grounds for divorce. It is to be observed that the wife testified that she completely forgave her husband for this incident and continued to have marital relations with him as set forth in the preceding paragraphs of this opinion.

The testimony of Dr. Wolf, offered in corroboration of the plaintiff wife's case, is invalid for that purpose since Dr. Wolf has no personal knowledge of the relations of the parties. Dr. Wolf never met or saw the defendant husband until the day of the hearing and the defendant never knew of the doctor's existence until he appeared in court. The only thing Dr. Wolf knew of the marriage was what the plaintiff had told him during her secret visits in 1967, 1968 and 1969. The only other corroborating witness to the wife's case, besides the sister, Mrs. Wolfson (whose testimony has been examined above) was Mrs. Bernice Herbert who stated "Mr. Rine has always been a perfect gentleman and I have never witnessed

any unpleasantness between them". Mrs. Herbert, Dr. Wolf and Mrs. Wolfson all testified that they observed that the plaintiff wife had lost weight and has become tense and nervous.

The plaintiff, Bergliette B. Rine, age 55, has undergone the menopause during the period of time that her witnesses testified observing that she was tense and nervous. The testimony of two of the plaintiff wife's doctors (Dr. J. R. Hilsenbeck and Dr. William C. Phillips) was taken by Mr. Earl D. Waldin, Jr. in his thorough preparation of this case for trial and considered by the court in its written form.

Dr. Hilsenbeck testified that he has recommended that the plaintiff wife undergo surgery for the removal and analysis of a mass he discovered in her abdomen in September, 1969. This impending operation made the plaintiff extremely upset and caused her considerable anguish. The plaintiff told the defendant husband of Dr. Hilsenbeck's diagnosis and medical recommendations in September, 1969. The parties were still living together in their apartment at this time (as they continued to do until the final hearing). The defendant impressed the court with his sincerity and deep concern for his wife at this agonizing period of her life. The defendant begged his wife to forget about the suit for divorce she had filed on June 16, 1969 and go to any of a number of the finest medical centers in the United States. He specifically suggested that she go to Philadelphia for her operation and offered not only to be at her bedside but to also completely underwrite any and all expenses for the operation. The husband testified that regardless of the outcome of this case he was and is willing to do anything, financially or otherwise, to assist his wife in this time of need.

The plaintiff wife elected to postpone the surgery until after these proceedings were concluded on the basis that she could not withstand the trauma of both the operation and divorce at the same time.

The court finds from the evidence before it that the basis of the plaintiff's emotional problems are her physical ailments over the past several years and not any conduct or acts on the part of the defendant husband. The husband has acted as would any loving, normal spouse during a period of disquiet in his wife's life.

The testimony offered in behalf of the defendant husband, both by himself and by other witnesses need not be analyzed in light of the court's subsequent ruling. Suffice it to say, and the court so finds, that the husband has acted in an exemplary manner toward his wife and that the first notice the husband had of any problem in the marriage was when his wife woke him up on June 17, 1969

at 7:25 a.m. to tell him to go to the door to be served by a deputy sheriff with a complaint for divorce in this suit.

There is no need to analyze the extensive and extremely thorough presentation made by Mr. Earl D. Waldin, Jr. of the wife's financial needs upon divorce and the husband's financial holdings. The court has seldom observed a more comprehensive case presented in domestic litigation than that presented by the attorneys in the case at bar. With respect to the award of attorney fees to the plaintiff's attorney the court has been advised that this matter was agreed upon and settled between the parties and their attorneys during the final hearing of this cause.

It is therefore ordered and adjudged —

(1) That the equities of the above styled cause are with the defendant, William E. Rine, and that the plaintiff, Bergliette B. Rine, has failed to prove the material allegations of her complaint.

(2) That the court has jurisdiction and subject matter of this cause and retains jurisdiction for the subsequent entry of an appropriate order fixing costs and attorney fees in the event the parties cannot amicably resolve these issues.

(3) That the complaint be and the same is hereby dismissed.